UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,        )<br>       Plaintiff,        )<br>               )<br>v.        )<br>               )<br>CORY MCCLENDON,        )<br>       Defendant.        ) | Cause No. 4:22-CR-00518 AGF |

### **DEFENDANT'S SENTENCING MEMORANDUM**

COMES NOW Defendant, by and through counsel, and respectfully submits this Sentencing Memorandum for the Court's consideration in imposing sentence in the above cause.

## I.    Introduction

Cory McClendon respectfully submits this memorandum to assist the Court in fashioning a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of sentencing, as required by Title 18, United States Code, § 3553(a).

On March 1, 2023, the defendant entered a plea of guilty to one count of Felon in Possession of a Firearm in violation of Title 18, United States Code, § 922(g)(1).  All parties agree that the Base Offense Level for this offense is 20 and that three offense levels should be deducted for Acceptance of Responsibility resulting in a Total Offense Level of 17.  Presentence Investigation Report ("PSR") ¶¶ 21, 26, 28, 29, 30.  The Government and the United States Probation Office believe the defendant has a criminal history category of V, based upon 10 criminal history points.  PSR ¶ 71.  The Defendant has objected to one of the criminal history points attributed to the defendant, and therefore submits that the defendant has a criminal history category of IV, based upon 9 criminal history points.  ECF DOC # 39.

According to the Government and the United States Probation Office, the guideline imprisonment range for the defendant is 46 months to 57 months.  PSR ¶ 106.  The Defendant maintains that the guideline imprisonment range is 37 months to 46 months.

Further, the defendant submits that, regardless of the ultimate guideline imprisonment range adopted, a sentence of 30 months to 32 months is "sufficient but not greater than necessary" to achieve the statutory purposes of sentencing.

II. **The Criminal History Point from the City of Jennings Municipal Court Should Not Be Credited Towards Cory McClendon's Criminal History Score as the Evidence of the Underlying Conviction Does Not Bear "Sufficient Indicia of Reliability to Support its Probable Accuracy."**

The disputed criminal history point at issue is for an alleged conviction from the City of Jennings Municipal Court on January 7, 2014.  PSR ¶ 67.  The defendant disputes that he ever pled guilty to or received a sentence for this offense.  (ECF DOC # 39).  The sole evidence used to support this conviction is an uncertified, docket entry sheet from the City of Jennings.  The City of Jennings neither has nor could produce an actual Judgment or Plea of Guilty form.  Although the defendant acknowledges that prior cases have held that certified copies of judgments are not required, the evidence used to establish the prior convictions must still have "sufficient indicia of reliability to support its probable accuracy."  United State Sentencing Guidelines ("USSG") § 6A1.3(a), p.s..  See Also (*United States v. Rodriguez*, 711 F.3d 928, 940 (8th Cir. 2013)(stating "An actual judgment of conviction is not required; rather, documentation must be accurate and reliable."); (*United States v. Stobaugh*, 420 F.3d 796, 803 (8th Cir. 2005)(stating "In this case, the district court reviewed numerous, and sometimes duplicative, records concerning each of [the defendant's] prior convictions.  Although the records were not

certified copies of judgments against [the defendant], they were from state agencies and authorities, and they represented the most accurate records those agencies could provide at the time…Under these circumstances, we hold that the district court did not clearly err in relying on these records…".). When determining whether the criminal history points should be assessed, "[a] district court's factual findings must be supported by a preponderance of the evidence…". *United States v. Roach*, 164 F.3d. 403, 414 (8th Cir. 1998); USSG §6A1.3(a), p.s. comment.

Although acknowledging that certified judgments or guilty plea forms are not always required, the defendant's position is that *under these circumstances* the documentation from the City of Jennings is insufficient to assess a criminal history point for the disputed offense. There are some key differences between the present matter and the prior cases where Judgments were not required. In *Rodriguez*, the district court was dealing with records from California State court, was not determining whether the defendant was previously convicted but whether he received a sentence longer than 60 days, and the district court was provided with the California court's docket sheet *and* the plea agreement. *Rodriguez*, 711 F.3d at 940. In *Stobaugh*, the Court specifically noted that "Although the records were not certified copies of judgments against [the defendant], *they were from state agencies and authorities*…". *Stobaugh*, 420 F.3d at 803 (emphasis added). And in *Roach*, although the Court stated the "[a]bsence of records underlying a conviction is not enough to create a presumption of invalidity", the defendant there was not disputing that he was convicted of the offenses at issue but was merely claiming that they were "insufficiently documented." *Roach*, 164 F.3d. 403, 414 (1998).

Here, Mr. McClendon is disputing that he was ever convicted of the underlying offense and there are legitimate reasons why the uncertified, docket sheet from the City of Jennings Municipal Court does not bear the same "indicia of reliability" as those from state courts,

agencies, or authorities. "After Michael Brown's death in Ferguson and the resulting Department of Justice report, the municipal divisions in St. Louis County were thrust into the national spotlight."  Hon. Patricia Breckenridge, Missouri's Chief Justice Delivers 2016 State of the Judiciary Address, 72 J. Mo. B. 84 (2016).  This "spotlight" exposed abuses that were occurring in the operations of municipal courts in St. Louis County leading to calls for action, reforms, and lawsuits.  Hon. Karl A.W. DeMarce, Courage As A Necessary Skill in Court Leadership, 73 J. Mo. B. 92 (2017).  In 2015, the City of Jennings itself was sued, and ultimately settled, a class action lawsuit where it was alleged the City of Jennings was violating the constitutional rights of people by incarcerating them for not being able to pay debts for traffic and minor offenses and subjecting people to inhumane conditions of confinement at the City of Jennings jail.  *Jenkins v. City of Jennings,* 4:15-CV-00252-CEJ.

    As a result of this overall attention, the daily operations of these courts, including the City of Jennings Municipal Court, were put on display.  In October 2014, Better Together, released a report on the Municipal Courts in the St. Louis area revealing concerning aspects of the operations of the City of Jennings Municipal Court.  At the time, the City of Jennings only held court one time a month and the average number of cases on a docket was 562.  Better Together, Public Safety-Municipal Courts, Table 8, October 2014, available at: https://www.bettertogetherstl.com/wp-content/uploads/2014/10/BT-Municipal-Courts-Report-Full-Report1.pdf.  Even giving the court the benefit of the doubt that they were in session for a full eight hours, that would mean the court was attempting to dispose of a little over 70 cases an hour, or each case was being given less than one minute of time.  In 2019, observers watched the City of Jennings Municipal Court in action and although the number of cases being addressed on

a given docket seemed to decrease, their observations still raise serious concerns about the attention being given to the matters before the court:

> "In Jennings, we observed at least forty-two defendants, of whom at least 89% were Black, seated in rows of benches, until their row was called to stand in a line in front of the judge.  The judge scowled at one Black man for wearing a do-rag in court, which he called disrespectful.  He *silenced defendants* who tried to speak to him unprompted and *speedily* imposed harsh monetary penalties before repeating the process with the next person in line."   Samuel Lev Rubinstein, <u>Dismantling Policing for Profit: How to Build on Missouri's Post-Ferguson Court Reforms</u>, 54 U. Mich. J.L. Reform 953, 973 (2021) (emphasis added)

The ultimate question for this Court is whether the documentation provided by the City of Jennings has "sufficient indicia of reliability to support its probable accuracy."  In some circumstances certified records, a judgment, or a plea of guilty form may not be necessary.  But in these circumstances, when dealing with a court that at best was allowing for less than a minute of time to address a defendant and their case, when there is no explanation for why further records are not available, when allegations have been raised about constitutional violations inherent in a specific court's operations, and when the defendant is contesting that the conviction ever occurred, then something more than the specific uncertified, docket sheet that has been provided here is necessary.

### III.     The History and Characteristics of Mr. McClendon Supports a Sentence of Imprisonment of 30 to 32 Months

"[D]istrict courts are not only permitted, but required, to consider 'the history and characteristics of the defendant'." United States v. White, 506 F.3d 635, 644 (8th Cir. 2007) (citing 18 U.S.C. § 3553(a)(1)).  One of the stated purposes of sentencing is the need for the sentence imposed "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." Title 18, United States Code, Section 3553(a)(2)(D).  Further, Title 18, United States Code, Section 3582(a) states

"The court in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." Mr. McClendon's education level, the trauma he suffered as a child, and his history of substance abuse indicate that his need for education, treatment, and rehabilitation are important considerations in determining the sentence to be imposed.

Specifically, Mr. McClendon has a limited educational background and is illiterate. During the presentence investigation interview, Mr. McClendon relayed that he "struggles with reading and writing" but his struggles are to the extent that he is illiterate as he is unable to read or write simple sentences. PSR ¶ 92. See (Title 20, Code of Federal Regulations, Section 416.964(b)(1))(stating "Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign their name."). Beyond literacy levels, Mr. McClendon's general educational background is limited as the highest grade he completed was the eighth grade and although he attempted to obtain his High School Equivalency in 1998, he was unsuccessful. PSR ¶¶ 92-93.

Part of his difficulties in education can be traced back to his physical health as a child. When Mr. McClendon was five years old, he contracted spinal meningitis that resulted in learning delays. PSR ¶ 74. "Meningitis is the inflammation of the tissues surrounding the brain and spinal cord." World Health Organization, Meningitis, April 17, 2023, available at: https://www.who.int/news-room/fact-sheets/detail/meningitis. The "after-effects" of contracting

meningitis can include "…difficulties with vision, speech, language, memory, and communication…". *Id.*

Mr. McClendon's educational background is important because there is a direct link between low literacy skills and incarceration with "those individuals who are still illiterate after serving their sentence hav[ing] a high probability of re-offending and re-entering the criminal justice system." Woodworth, Andy and PC Sweeney, <u>The Impact of Literacy and Library Services on Crime Rates and Public Safety: Data exploration and report by the EveryLibrary Institute</u>, p. 2, available at: https://www.everylibraryinstitute.org/literacyandcrime.  And studies have shown that individuals "who cannot read on level by third grade are four times more likely to drop out of high school. Those unable to master even basic reading skills by third grade are six times more likely to drop out.  Without early intervention from schools, libraries, and parents/guardians with sufficient literacy themselves, children can very quickly fall behind peers and never catch up." *Id.*  Further, "research regarding reading competency and on the literacy skills of incarcerated individuals, provides strong evidence that lower literacy rates are a key contributing factor to the national crime rate and levels of incarceration.  Without a basic level of academic competencies or credentials, criminal activities become a more probable means of financial survival." *Id.*

In addition to his educational and learning struggles, Mr. McClendon also experienced traumatic experiences at a young age as his mother and stepfather were addicted to heroin and cocaine, resulting in both being "in and out" of jail throughout his childhood.  PSR ¶ 74. Although the defendant was able to start living with his grandparents at the age of six, there were additional difficulties within his grandparents' home as his grandfather was an alcoholic whom the defendant witnessed being physically abusive towards his grandmother.  *Id.*  Additionally, his

grandparents struggled financially to take care of him leading, in part, to him "'hustling on the streets." *Id.* Although, the defendant has no history of mental health conditions, these are traumatic experiences to have gone through at a young age and counseling would be beneficial for the defendant.

Since the age of 17, Mr. McClendon has also struggled with substance abuse issues related to several controlled substances, including marijuana, alcohol, cocaine, and ecstasy. PSR ¶ 89. Mr. McClendon has participated in treatment programs in the past but would benefit from further treatment for these issues. PSR ¶ 90, 91.

## **CONCLUSION**

Overall, Mr. McClendon's educational history, the trauma he experienced as a child, lack of financial resources growing up, and substance abuse issues later in life are all interconnected. While there are obviously multiple purposes of sentencing, Mr. McClendon and society would benefit the most from a sentence that addresses the root causes of Mr. McClendon's criminal behavior. This can be achieved best by providing education, treatment, and rehabilitation in the most effective manner. Mr. McClendon submits to this Court that a sentence of imprisonment of 30 to 32 months followed by a period of supervised release would be a sentence that is "sufficient but not greater than necessary".

Respectfully Submitted,

/s/ William Chapman-Kramer
William Chapman-Kramer, 65364MO
Assistant Federal Public Defender
1010 Market Street – Suite 200
St. Louis, Missouri 63101
Telephone 314-241-1255
Fax: 314-421-3177
Email: William_Chapman-Kramer@fd.org

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 30, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Office of the United States Attorney.

/s/ William Chapman-Kramer
William Chapman-Kramer